Concurring Opinion by
Justice Burgess
CONCURRING OPINION
I join the majority opinion and write separately to respectfully address one point raised by the dissent. The dissent does not question the sufficiency of the evidence establishing the objective element of gross negligence as to both Dennis Ray-ner and Joe Tex Xpress, Inc. (Joe Tex), and the majority thoroughly addresses the sufficiency of the evidence establishing the subjective element of gross negligence as to Rayner. Therefore, my response is limited to the dissent’s position that the subjective element of gross negligence was not established by clear and convincing evidence as to Joe Tex. In order to understand why I believe the evidence is sufficient as to that issue, it is necessary to briefly review the unique fashion in which this case was tried.
A. Procedural History
At trial, Krista Dillon presented the evidence of log book violations and excessive driving detailed' by the majority to prove that Rayner and Joe Tex were grossly negligent because Rayner was fatigued on the occasion in question and because Joe Tex allowed him to drive in that condition.[12] Although Dillon only alleged fatigue as a separate act of gross negligence and not as an act of ordinary negligence, both theories of negligence and gross negligence were tried together and all of, the evidence was presented to the jury without limitation. Neither Rayner nor Joe Tex requested a limiting instruction when evidence of Rayner’s fatigue was presented to the jury nor did they object to any variance between the pleadings and proof.[13] Therefore, the evidence Dillon presented on the issue of gross negligence was also considered by the jury on the question of ordinary negligence and proximate cause.[14]
After the close of the evidence, the trial court submitted question 1, a broad-form question combining ordinary negligence and proximate cause. The jury answered yes to that question as to both Rayner and Joe Tex. After trial, both Rayner and Joe Tex accepted and paid the underlying judgment and only challenged on appeal *158 the gross negligence finding and the award of exemplary damages.
Because the trial court submitted the ordinary negligence and proximate cause issues in a single, broad-form question, the jury’s answer to the ordinary negligence question constitutes a finding of all the specific acts of negligence for which evidence was presented against Rayner and Joe Tex. Because the evidence regarding excessive driving and. log book violations was presented without limitation and because the jury could consider that evidence in deciding whether Rayner and Joe Tex were negligent, the jury’s finding of ordinary negligence necessarily includes a finding that Rayner was fatigued and that his fatigued driving was a proximate cause of the accident in this case.[15] By not asserting that the evidence was insufficient to support the jury’s ordinary negligence and proximate cause findings on appeal, Rayner and Joe Tex have waived any argument that the evidence was insufficient to prove that Rayner was fatigued on the occasion in question and that Rayner’s negligence was a proximate cause of the accident.[16] Therefore, on this record, we are bound by the jury’s findings on those allegations.[17]
*159 B. The Evidence Is Sufficient to Support the Subjective Element of Gross Negligence as to Joe Tex
The dissent correctly points out that no one (including the two investigating police officers) testified that Rayner appeared at the time to be fatigued and that Rayner himself denied being fatigued at the time of the accident. The dissent then concludes that, in the absence of such evidence, Dillon has failed to prove by clear and convincing ewdenee that Rayner or Joe Tex knew that Rayner was fatigued on the day of the accident. However, in considering whether sufficient evidence establishes the subjective element as to Joe Tex, it is important to note that Dillon alleged grossly negligent entrustment against Joe Tex in addition to gross negligence. Negligent entrustment requires “a showing of (1) entrustment of a vehicle by the owner; (2) to an unlicensed, incompetent, or reckless driver; (3) that the owner knew or should have known to be unlicensed[, incompetent, or reckless]; (4) that the driver was negligent on the occasion in question[;] and (5) that the driver’s negligence proximately caused the accident.” Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex.1987). “Punitive damages can be imposed if the owner of the vehicle knows or should have known that the entrusted driver was incompetent or habitually reckless and the owner was grossly negligent in entrusting the vehicle to that driver.” Id. Finally, “[f]or entrustment to be a-proximate cause, the defendant entrustor should be shown to be reasonably able to anticipate that an injury would result as a natural and probable consequence of the entrustment.” Id.
Therefore, Dillon did not have to prove by clear and convincing evidence that Joe Tex subjectively knew that Rayner was fatigued on the day of the accident. Instead, because the jury’s unchallenged answer to question 1 established that Rayner was fatigued and that his fatigue proximately caused the accident, Dillon only had to prove by clear and convincing evidence that Joe Tex subjectively knew that Rayner was an “incompetent or habitually reckless” driver based on his history of fatigued driving and that it was “able to anticipate that an injury would result as a natural and probable consequence of the entrustment.” Id.
The Department of Transportation (DOT) adopted the log book and driving limit regulations precisely because of the inherent difficulty in' establishing driver fatigue as weighed against the potential danger to the public by fatigued drivers.[18] The clear purpose behind these regulations is to ensure that tractor-trailer drivers are not placing- the public at risk of death or serious injury on the nation’s highways by *160 driving while fatigued.[19] Rayner and Joe Tex both acknowledged that they knew the purposes behind the requirements as well as the risks associated with fatigued driving. Yet, notwithstanding this knowledge, Rayner chronically and flagrantly violated those regulations, and Joe Tex knew it.
Therefore, even under the clear and convincing evidence standard, given the substantial history of Rayner’s log book violations and driving in excess of the federal driving limits presented in this case, as well as the jury’s unchallenged findings that Rayner’s fatigued driving proximately caused the accident, the jury could fairly infer that Joe Tex was subjectively aware of the risk that Rayner was an “incompetent or habitually reckless” driver based on his history of excessive driving and that Joe Tex was “able to anticipate that an injury would result as a natural and probable consequence of the entrustment,” but it “nevertheless proceed[ed] with conscious indifference to the rights, safety, or welfare of others.” Tex. Crv. Prao. & Rem. Code ANN. § 41.001(11) (West Supp. 2015); Schneider, 744 S.W.2d at 596. Consequently, Dillon presented legally and factually sufficient evidence to establish grossly negligent entrustment against Joe Tex.
C. Conclusion
Of course, it is not possible to draw a bright-line at the point where log-book violations become sufficient evidence to support a grossly negligent entrustment finding. Considering the competing interests, it seems clear that the point where the history of log-book violations rises to the level of clear and convincing evidence to support a grossly negligent entrustment finding is very high. But here, we have evidence (1) that Rayner had a substantial history of driving in excess of the federal driving limits, (2) that Joe Tex knew that history and, therefore, knew that Rayner was at risk of driving while fatigued, (3) that Joe Tex was “able to anticipate that an injury would result as a natural and probable consequence of the entrustment,” and (4) that, despite that knowledge, Joe Tex made the conscious decision to violate its own work place rules and put Rayner back on the road because, in the words of Joe Tex’s owner, “It’s my call. It’s my company. I can kind of do what I want.”
Therefore, the evidence was legally and factually sufficient to support the gross negligence findings and punitive damages awards against Joe Tex.

. The majority opinion lists the evidence Dillon presented on the issue of gross negligence. See majority opinion supra Part I.

. See Burk Royalty Co. v. Walls, 616 S.W.2d 911, 924 (Tex.1981) (holding that variance between pleadings and proof "is a pleading problem, one that is handled by objections to the evidence and one which requires distinct objections to the charge which specifically advise the court of each variance”) (citing Tex R. Civ. P. 274).

. See Scotchcraft Bldg. Materials, Inc. v. Parker, 618 S.W.2d 835, 837 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref’d n.r.e.) ("It is the duty of the party objecting to the introduction of evidence which is admissible for one. purpose but hot for another, to request the court to limit the purpose for which it might be considered, and failing to do so, he may not be heard to complain that the jury may have considered the evidence for other purposes."); Aluminum Co. of Am. v. Alm, 785 S.W.2d 137, 139 (Tex.1990) (“[S]ince Aim did not request a limiting instruction, admission of the evidence was, for all practical purposes, a general offer. Therefore, the jury was afforded the opportunity to consider the evidence of Alcoa's warnings to Seven-Up in its deliberation on ordinary negligence.” (citations omitted)).

.Because fatigued driving is neither a separate theory of liability nor a separate element of a theory of liability, but is simply an act Dillon alleged to establish the failure to use ordinary care element of a negligence claim, ' Dillon was not required to seek a separate question to establish that Rayner was fatigued and that his fatigued driving proximately caused the accident in question. When a plaintiff presents evidence that the defendant committed several negligent acts which proximately caused her injuries, but only alleges one theory of liability—negligence—the trial court is not required to charge the jury with a separate question as to each negligent act. See Columbia Med. Ctr. of Las Colinas v. Bush, 122 S.W.3d 835, 858-59 (Tex.App.—Fort Worth 2003, pet. denied) (holding that no error was shown by trial court’s broad-form submission of negligence question even though plaintiff alleged several acts of negligence by each defendant, noting that "these acts are not separate theories of liability and do not constitute the assertion by [plaintiff] of any additional basis for recovery”). And when a party fails to "challenge in the court of appeals the factual or legal sufficiency of the evidence supporting” the jury’s answer, the answer is established as to the theory alleged. See In re A.V., 113 S.W.3d 355, 362 (Tex.2003) (holding that evidence supporting termination of appellant's parental rights under Section 161.001(b)(l)(Q) of the Texas Family Code was sufficient in absence of challenge to "factual or legal sufficiency of evidence supporting subsection Q.”); see also Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue, 271 S.W.3d 238, 242 (Tex.2008) ("This is a medical malpractice case. In this appeal, it is undisputed that the hospital caused Bob Ho-gue’s death. The jury made that finding' at trial, the hospital does not challenge it in this Court, and the dissenting justices acknowledge that the evidence supports that finding.”).

. See Operation Rescue-Nat’l v. Planned Parenthood of Houston & Se. Tex, Inc.:
Appellants have not raised any points of error attacking the sufficiency of the evidence supporting the jury’s findings that they participated in a conspiracy to interfere with the business of the clinics or that they and their operatives tortiously interfered with the clinic’s business. By failing to allege error in a point of error, any complaint as to these findings has been waived.
Operation Rescue-Nat’l v. Planned Parenthood of Houston & Se. Texas, Inc., 937 S.W.2d 60, 67 n. 1 (Tex.App.—Houston [14th Dist.] 1996), aff'd as modified, 975 S.W.2d 546 (Tex.1998) (citing San Jacinto River Auth. v. Duke, 783 S.W.2d 209, 210 (Tex.1990) (per curiam)).

. Because the evidence of log-book violations and excessive driving was presented to the jury without limitation and because Ray-ner and Joe Tex did not challenge the sufficiency of that evidence to support the jury’s subsequent ordinary negligence and proximate cause findings, we cannot at this point consider whether that type of evidence is sufficient to establish that Rayner was fatigued and that his fatigued driving proximately *159 caused Ae accident. Rather, we must begin our analysis of the gross, negligence findings by assuming Aat Ae evidence was sufficient to establish those facts.

. In United States v. Sandhu, 462 F.Supp.2d 663 (E.D.Pa.2006), Ae Federal District Court for the Eastern District of Pennsylvania observed,
In a case regarding Ae DOT’S rule for motor carriers’ safety fitness ratings, Ae D.C. Circuit approvingly cited several studies finding that fatigue plays a significant role in truck drivers’ accidents. Looking at Ae record in Ae case, Ae court noted Aat one study found Aat fatigue was Ae " ‘probable primary cause’ of 41% of studied accidents"; a second study found an “over-risk of involvement in accidents beyond ten and more hours of work span"; and a Aird study concluded Aat "accident rates for trucks tend to increase dramatically the longer Ae driver continues beyond 8 hours of continuous driving."
Id. at 673-74 (citations omitted) (quoting Am. Trucking Ass’ns v. U.S. Dep’t of Transp., 166 F.3d 374, 384-85 (D.C.Cir.1999) (internal quotation marks omitted)).

. The court in Sandhu went on to discuss the legislative history behind the federal regulations, noting,
The 10-hour rule [now 11-hour] on the other hand, has a different purpose: promoting safety. Though the hours of service regulations have a somewhat tortured history, the intent of Congress and the DOT is clear: limiting the hours CMV drivers can drive (and requiring them to submit logbooks verifying their hours) improves the safety of our nation's roadways. Circumventing the regulation means risking the safety of innocent motorists.
Id. at 672.